# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**ALGERNON DOBY**                                                                   **PETITIONER**
**# 095824**

**VS.**            **Case No. 5:06CV00207 BD**

**LARRY NORRIS, Director**
**Arkansas Department of Correction**                                     **RESPONDENT**

## ORDER

I.    Background

Petitioner Algernon Doby pled guilty to first-degree murder, aggravated robbery, battery, and theft of property. He was sentenced to 300 months in prison for first-degree murder with a suspended sentence of 120 months, 480 months on the robbery charge, 240 months on the battery charge, and 240 months on the theft-of-property charge. The trial court ordered the sentence for first-degree murder to be served consecutively to the concurrent sentences Petitioner received for the robbery, battery, and theft-of-property charges.

Petitioner filed a timely petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.1 alleging several claims of ineffective assistance of counsel. After holding an evidentiary hearing, the trial court denied Petitioner's Rule 37 petition. The Supreme Court of Arkansas affirmed in an unpublished opinion. *Doby v. State*, No. 04-1282, 2005 WL 3075401 at *2 (Ark. Nov. 17, 2005).

In this habeas corpus action, Petitioner claims that he was denied his Sixth Amendment right to effective trial counsel because his lawyer: (1) failed to advise him that the sentences on his charges would not all run concurrent; (2) told him he would be eligible for parole in six-and-one-half years; and (3) told him that he would get credit for four years of jail time. Each of these grounds was raised in Petitioner's Rule 37 Petition to the state trial court and again in his appeal of the denial of the Rule 37 Petition to the Supreme Court of Arkansas.

II.  Standard of Review

A.  Limited Federal Review of Claims Adjudicated in State Court

"When a claim has been adjudicated on the merits in state court, habeas relief is warranted only if the state court proceeding resulted in (1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Bucklew v. Luebbers*, 436 F.3d 1010, 1015 (8th cir. 2006) (quoting 28 U.S.C. § 2254(d)(1) and (2)); see also *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462 (2005).

A state court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court

has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000).

A decision is "an unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Siers v. Weber,* 259 F.3d 969, 973 (8th Cir. 2001) (citing *Williams, supra*). See also, *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (holding that where a state court's application of federal law is challenged, that application "must be shown to be not only erroneous but objectively unreasonable.") "In other words, it is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (citation omitted).

In addition, in a federal habeas proceeding, a state court's factual findings are entitled to a presumption of correctness, absent procedural error. Those findings may be set aside "only if they are not fairly supported by the record."

3

*Simmons v. Luebbers*, 299 F.3d 929, 942 (8th Cir. 2002) (quoting *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769 (1995) and *Middleton v. Roper,* 455 F.3d 838, 845 (8th Cir. 2006)).

B.   <u>Limited Federal Review of Claims for Ineffective Assistance of Trial Counsel</u>

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel at every stage of the proceeding. "That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough,* 540 U.S. at 5 (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Thus, in order to prevail on a habeas corpus claim of ineffective assistance of counsel, a petitioner must show: (1) that trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability the outcome of the trial would have been different but for the substandard performance of trial counsel. See *Strickland,* 466 U.S. at 687-94. Furthermore, "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689); see also *Middleton,* 455 F.3d at 845. Stated another way, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged

with the benefit of hindsight." *Yarborough*, 540 U.S. at 8. Petitioner's current habeas corpus Petition must be analyzed against this legal backdrop.

III.     Analysis of Petitioner's Claims

For his error, Petitioner claims that his lawyer's performance was constitutionally deficient because his lawyer told him that if he accepted the plea bargain all of his sentences would run concurrently, that he would be eligible for parole in six-and-one-half years, and that he would be credited for four years of jail time toward the sentences imposed on the convictions. Petitioner's argument fails for two reasons: first, because the state courts' factual findings are supported by the record, and second, because the Arkansas courts' opinions denying relief are neither "contrary to" federal law as set out by the United States Supreme Court nor are the opinions "objectively unreasonable."

A.     The State Court's Factual Findings

The Court has reviewed the trial court record and has not found any procedural error. The trial court held a hearing on the Rule 37 petition, and its factual findings are fairly supported by the record. The record establishes that Petitioner was initially charged with capital murder, criminal attempt to commit capital murder, aggravated robbery, and theft of property. (Respondent's Ex. A at 92-93) The State sought the death penalty on the capital murder charge, alleging that Petitioner was a habitual offender, and sought enhanced sentences for the other offenses. (Respondent's Ex. A at 3) Petitioner moved to dismiss the pending charges on grounds that the State had violated his right to a speedy

trial. The trial court denied the motion to dismiss and the Arkansas Supreme Court denied a writ of prohibition. *Doby v. Jefferson County Circuit Crt.*, 350 Ark. 505, 88 S.W. 3d 824 (2002). Petitioner subsequently petitioned the District Court for a writ of habeas corpus which was denied. *Doby v. Norris*, No. 5:03CV00148 (E.D. Ark. July 7, 2003).

Shortly after the District Court denied his habeas corpus petition, Petitioner entered into the negotiated plea of guilty. At the plea hearing, Petitioner stated that he was satisfied with his attorneys' representation (Respondent's Ex. A at 236) and that he had read and comprehended the plea documents he signed (Respondent's Ex. A at 237). Petitioner also attested that the plea agreement, including the provision that the sentence on the first-degree murder charge would run consecutive to the other concurrent sentences, was the total plea agreement as he understood it and nothing had been deleted or changed. (Respondent's Ex. A at 241)

Following his guilty plea, Petitioner filed a petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure urging the trial court to set aside his plea because of ineffective assistance of counsel. Petitioner contended that he would not have pled guilty to the charges if he had been informed by his lawyer that he would have to serve the first-degree murder sentence consecutive to the concurrent sentence on the other charges. Petitioner's claim relies in part on the allegation that the sentence-recommendation form was changed after he entered his plea. Specifically, he alleges that

the word "concurrent" which had been circled when he signed the agreement, was crossed out and the word consecutive was circled. Petitioner claims it was not until he received a copy of the judgment and commitment order that he realized he would not be eligible for parole for approximately twenty-five years rather than the six-and-one-half years that his lawyer "assured" him. Petitioner also claims that his lawyer "assured" him that the judgment and commitment order would reflect four years of jail time credit. Petitioner repeats these arguments in his habeas petition.

At a hearing on the Rule 37 petition, the trial court took testimony from Petitioner, Petitioner's trial counsel, Petitioner's investigator, and the special prosecutor. Petitioner's lead counsel, Ms. Harris, testified that she read the entire plea statement and sentence recommendation to Petitioner, and he indicated he understood the State's recommendation. (Respondent's Ex. A at 123-24, 127) She also testified that the plea agreement form she received from the prosecuting attorney and discussed with the Petitioner recommended that Petitioner serve his sentence for first-degree murder consecutive to the remaining sentences. (Respondent's Ex. A at 122-23) The prosecutor testified that he had corrected his own mistake by crossing through the encircled "concurrent" and circling "consecutive" while preparing the form to send to Ms. Harris. (Respondent's Ex. A at 136, 139-40) Ms. Harris testified that she discussed with Petitioner the fact that the first-degree murder sentence would be consecutive to the other sentences, and that he indicated he understood. (Respondent's Ex. A at 181-82)

7

While there was conflicting evidence on this point by two other witnesses, the trial court found that (1) the negotiated sentence was favorable to Petitioner; (2) Petitioner understood the plea agreement and the sentence recommendation; (3) Petitioner understood how parole works because of his experience in the Department of Correction; (4) Petitioner received good and effective assistance of counsel; and (5) Petitioner's counsel's performance was not deficient, *i.e.* it did not fall below an objective standard of reasonableness. (Respondent's Ex. B at 78) These findings are fairly supported by the record and are entitled to a presumption of correctness.

With respect to Petitioner's jail time credit, Ms. Harris testified that she informed Petitioner that the statute did not provide that he get credit for time served while he was incarcerated in the Department of Correction, but she understood that the prosecutor was willing to give him credit for time he was actually there. (Respondent's Ex. A. at 96, 99-100) The prosecutor testified that he did not recall discussing jail time credit during the plea negotiations, and it was not part of his recommendation. (Respondent's Ex. A at 137, 142) After the original judgment and commitment was entered, someone in the prosecutor's office discovered that Petitioner was entitled to twelve days of jail time credit and prepared an amended judgment reflecting the credit. (Respondent's Ex. A at 141)

The prosecutor further testified that there was a discussion about time credit after the plea was entered. At that time, he offered to allow Petitioner four years' credit to

8

resolve a threatened post-conviction claim, but that offer expired when Petitioner filed his Rule 37 petition. (Respondent's Ex. A at 100-101, 137-38, 141-42)

On this issue, the court found (1) the plea agreement provided that Petitioner would only receive jail-time credit to which he was legally entitled; (2) Petitioner was not legally entitled to more than twelve (12) days of jail credit because he was confined to prison on other charges during the four years he claims; (4) the trial court did not address jail credit but the judgment and commitment properly awarded the Petitioner twelve days of credit; (5) Petitioner understood the plea agreement and the sentence recommendation; and (6) counsel's performance was not deficient, *i.e.* it did not fall below an objective standard of reasonableness. (Respondent's Ex. B at 78) These findings are also fairly supported by the record and are entitled to a presumption of correctness. There is no basis for habeas corpus relief.

B.  The Application of Federal Law

In its written order denying the Rule 37 petition, the trial court applied the well established two-part test set forth in *Strickland v. Washington*, *supra*, to determine whether counsel's performance was constitutionally ineffective. In its opinion affirming the trial court, the Arkansas Supreme Court also applied the two-part test from *Strickland v. Washington*, *supra*, to the facts, but also applied the United States Supreme Court's decision in *Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 371 (1985). In *Hill*, the United States Supreme Court held that the *Strickland* test applies to claims of effective

assistance of counsel during plea negotiations, but declined to decide whether erroneous advice as to parole eligibility may be deemed constitutionally ineffective assistance of counsel.

The Court of Appeals for the Eighth Circuit, however, recently ruled that a state court opinion holding that failure to provide a criminal defendant with information about Arkansas's seventy-percent parole rule[1] did not constitute ineffective assistance of counsel. *Buchheit v. Norris*, 459 F.3d 849 (8th Cir. 2006). The Court of Appeals reasoned that, because the United States Supreme Court specifically has declined to decide whether erroneous advice as to parole eligibility can support a claim for ineffective assistance of counsel, there is no "clearly established" federal law on the issue. On that basis, the Eighth Circuit determined that it could "hardly conclude that the Arkansas courts unreasonably determined that [the petitioner's] representation was constitutionally effective." *Buchheit*, 459 F.3d at 852.

In this case, the Arkansas courts reasonably applied the two-prong *Strickland* test to determine that Petitioner received constitutionally effective assistance of counsel during the plea negotiation. The state court decisions are not contrary to, nor an unreasonable application of, clearly established federal law, and consequently there is no basis for habeas corpus relief.

---

[1] Under Arkansas law, a person convicted of certain crimes is required to serve a minimum of 70% of the sentence imposed before he or she is eligible for parole.

10

IV.     Conclusion

Petitioner has no sustainable grounds for habeas corpus relief.  Accordingly, this 28 U.S.C. § 2254 petition for writ of habeas corpus (#2) is DISMISSED in its entirety, with prejudice.

IT IS SO ORDERED this 30th day of March, 2007.

_____
United States Magistrate Judge